1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10  ASCENCION ROJAS,                           1:11-CV-00917 LJO BAM HC

11                      Petitioner,           FINDINGS AND RECOMMENDATION
                                              REGARDING PETITION FOR WRIT OF
12          v.                                HABEAS CORPUS

13
    R. H. TRIBLE, Warden,
14
                        Respondent.
15  _____/

16

17      Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18  pursuant to 28 U.S.C. § 2254.

                            **BACKGROUND**
19

20      Petitioner is currently in the custody of the California Department of Corrections pursuant

21  to a judgment of the Superior Court of California, County of Tulare, following his conviction by

    jury trial on April 14, 2008, of shooting at an inhabited dwelling (Cal. Penal Code § 246),
22
    committing assault with a semiautomatic firearm (Cal. Penal Code § 245(b)), personally using a
23
    handgun (Cal. Penal Code § 12022.5), carrying a loaded firearm (Cal. Penal Code
24
    § 12031(a)(1)), and carrying a concealed firearm in a vehicle (Cal. Penal Code § 12025(a)(1)).
25
    Petitioner was further found guilty of committing the offenses for the benefit of a criminal street
26
    gang (Cal. Penal Code § 186.22(b)).  (CT[1] 908-909, 930-931.)  On October 21, 2008, Petitioner
27

28  _____
        [1]"CT" refers to the Clerk's Transcript on Appeal.

                                              1

1   was sentenced to serve an indeterminate term of 15 years to life in state prison. (CT 908-909.)

2        Petitioner timely filed a notice of appeal.  On January 14, 2010, the California Court of

3   Appeal, Fifth Appellate District ("Fifth DCA"), affirmed Petitioner's judgment in a reasoned

4   decision.  (See Resp't's Answer, Ex. A.)  Petitioner then filed a petition for review in the

5   California Supreme Court.  (See Lodged Doc. No. 4.)  On May 12, 2010, the petition was

6   summarily denied.  (See Lodged Doc. No. 4.)

7        On May 16, 2011, Petitioner filed the instant federal habeas petition.  He presents the

8   following claims for relief: 1) He contends there was insufficient evidence to support the gang

9   enhancement; 2) He alleges the trial court prejudicially erred in instructing the jury on the gang

10  enhancement; and 3) He claims the trial court improperly increased his sentence from an

11  otherwise determinate sentence to a life sentence based on a "wobbler" offense.  On

12  September 9, 2011, Respondent filed an answer to the petition.  On January 24, 2012, Petitioner

13  filed a traverse.

14                              **STATEMENT OF FACTS**[2]

15        During the early morning hours of February 17, 2007, the residence of G.F. was
    shot in a drive-by shooting. A neighbor saw the vehicle involved in the shooting and
16  called the police. A patrol officer in the vicinity heard shots, and shortly thereafter,
    learned details of the drive-by shooting from a police dispatcher. The officer soon saw a
17  vehicle matching the description of the suspect vehicle-a white Ford Explorer-and started
    following it. The vehicle drove at a normal rate of speed and eventually pulled into a
18  residential driveway.

19        Other officers arrived and the three occupants of the white Ford Explorer were
    ordered out of the vehicle. Appellant was the driver, M.D. was seated in the front
20  passenger seat, and L.O. was seated in the back seat on the right side behind M.D. It was
    later learned that L.O. lived at the residence where the vehicle had stopped. Officers
21  searched the vehicle and found two semiautomatic handguns in a compartment in the
    back part of the vehicle. One of the handguns was loaded. They also found three nine-
22  millimeter Luger shell casings on the floor of the vehicle. Six such shell casings were
    found outside the residence involved in the drive-by shooting. Also found in the vehicle
23  were a red and black beanie, a red bandana, two holsters, and a magazine for a gun.

24        An expert on gunshot residue testified regarding samples taken from the hands of
    appellant, L.O., and M.D. near the time of their arrest. The expert analyzed the samples
25  and found that both appellant and L.O. had highly specific particles of gunshot residue on
    their hands. Based on the presence of these particles, the expert opined that appellant and

26

27        [2]The Fifth DCA's summary of the facts in its January 14, 2010, opinion is presumed correct. 28 U.S.C.
28  §§ 2254(d)(2), (e)(1).  Petitioner does not present clear and convincing evidence to the contrary; thus, the Court
    adopts the factual recitations set forth by the Fifth DCA.

                                        2

L.O. either discharged firearms or they were in the environment of gunshot residue. No particles of gunshot residue, however, were found in the sample taken from M.D., the front seat passenger.

Earlier during the day before his house was shot in the drive-by shooting, G.F. got into a verbal confrontation with L.O. at their high school. According to G.F., L.O. made a derogatory comment about G.F.'s mother. The confrontation quickly ended as teachers came and separated G.F. and L.O. Later, L.O. walked by G.F. and said, "I'll see you tonight." A teacher that overheard L.O.'s remark testified that L.O. primarily associated with the Norteno gang, and that G.F. primarily associated with the rival Sureno gang. G.F. testified that he had friends that were Surenos and that L.O. hung around with Nortenos. G.F. further testified that L.O. had harassed him in the past about hanging around with Surenos.

At the time of his arrest, appellant was wearing a red sweatshirt over a red shirt, and a red belt with the number "14" on the belt buckle, attire typical of members of the Norteno gang. Appellant also had typical Norteno gang tattoos, including a star on his elbow and four dots on his hand. When appellant was booked into jail, he filled out an inmate classification questionnaire, in which he responded that he associated with the "Northern" gang, and that his known enemy was "South[.]"

Visalia Police Officer Dominic Mena presented testimony to support his opinion that appellant and L.O. were both members of the Norteno (or northern) criminal street gang and that the crimes in this case were committed for the benefit of the gang.

Additional facts are set out in the discussion.

*The Defense*

Appellant presented an alibi defense. According to the testimony of appellant and other witnesses, he was at a party at his wife's cousin's house when L.O. came and borrowed his white Ford Explorer. L.O. testified that he and two others (who he refused to identify) committed the drive-by shooting and admitted that G.F. was the intended target. He also claimed the two guns found in the vehicle belonged to him. After the shooting, L.O. called M.D. and arranged to meet appellant and M.D. at a location near the party. L.O. needed appellant to drive him home. L.O. left several items inside appellant's vehicle, including a red beanie, a red bandana, some shell casings, and a holster for a gun. He had intended to pick those things up when he went home.

Appellant claimed he had dropped out of the Norteno gang and that he got all his gang tattoos when he was 14 or 15 years old and had not gotten any tattoos since he was 15 years old. On the night of the shooting, he was wearing the red belt because it was a belt he had had for a long time. He wore his clothes over the belt so it would not be visible. He wore the red sweatshirt because the warehouse where he worked as a packer was cold, and he had just gotten off work before going to the party.

(See Resp't's Answer, Ex. A.)

# DISCUSSION

I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody

pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

3

1  or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>,

2  529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered

3  violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises

4  out of Tulare County Superior Court, which is located within the jurisdiction of this Court.  28

5  U.S.C. § 2254(a); 2241(d).

6      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

7  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

8  enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; <u>Jeffries v. Wood</u>, 114

9  F.3d 1484, 1499 (9th Cir. 1997), <i>cert. denied,</i> 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

10  <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir.1996), <i>cert. denied,</i> 520 U.S. 1107, 117 S.Ct.

11  1114 (1997), <i>overruled on other grounds by</i> <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059

12  (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

13  petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

14  II.    <u>Standard of Review</u>

15      The instant petition is reviewed under the provisions of the Antiterrorism and Effective

16  Death Penalty Act which became effective on April 24, 1996.  <u>Lockyer v. Andrade</u>,  538 U.S. 63,

17  70 (2003).  Under the AEDPA, a petitioner can prevail only if he can show that the state court's

18  adjudication of his claim:

19      (1) resulted in a decision that was contrary to, or involved an unreasonable
20      application of, clearly established Federal law, as determined by the Supreme
       Court of the United States; or

21      (2) resulted in a decision that was based on an unreasonable determination of the
       facts in light of the evidence presented in the State court proceeding.
22

23  28 U.S.C. § 2254(d); <u>Lockyer</u>, 538 U.S. at 70-71; <u>Williams</u>, 529 U.S. at 413.

24      As a threshold matter, this Court must "first decide what constitutes 'clearly established

25  Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71,

26  <i>quoting</i> 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

27  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

28  of the time of the relevant state-court decision." <u>Id.</u>, <i>quoting</i> <u>Williams</u>, 592 U.S. at 412. "In other

1   words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

2   principles set forth by the Supreme Court at the time the state court renders its decision." Id.

3       Finally, this Court must consider whether the state court's decision was "contrary to, or

4   involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

5   72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may

6   grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

7   Court on a question of law or if the state court decides a case differently than [the] Court has on a

8   set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.

9   at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

10  state court identifies the correct governing legal principle from [the] Court's decisions but

11  unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

12      "[A] federal court may not issue the writ simply because the court concludes in its

13  independent judgment that the relevant state court decision applied clearly established federal

14  law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

15  A federal habeas court making the "unreasonable application" inquiry should ask whether the

16  state court's application of clearly established federal law was "objectively unreasonable." Id. at

17  409.

18       Petitioner has the burden of establishing that the decision of the state court is contrary to

19  or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

20  Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

21  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

22  state court decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-

23  01 (9th Cir.1999).

24      AEDPA requires that the federal court give considerable deference to state court

25  decisions. "Factual determinations by state courts are presumed correct absent clear and

26  convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a

27  state court and based on a factual determination will not be overturned on factual grounds unless

28  objectively unreasonable in light of the evidence presented in the state court proceedings, §

1    2254(d)(2)." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).  Both subsections (d)(2) and (e)(1)

2    of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law.  <u>See</u>

3    <u>Lambert v. Blodgett</u>, 393 F.3d 943, 976-77 (2004).

4    III.    <u>Review of Claims</u>

5            A.  <u>Gang Enhancement</u>

6            In his first claim, Petitioner claims the evidence was insufficient to support the allegation

7    that he committed the offense with the specific intent to promote, further, or assist a criminal

8    street gang.

9            This claim was presented on direct appeal to the Fifth DCA which denied the claim in a

10   reasoned decision. (<u>See</u> Resp't's Answer, Ex. A.)  Petitioner then raised the claim to the

11   California Supreme Court. (<u>See</u> Lodged Doc. No. 4.)  The California Supreme Court denied the

12   claim without comment.  (<u>See</u> Lodged Doc. No. 4.)  When the California Supreme Court's

13   opinion is summary in nature, the Court must "look through" that decision to a court below that

14   has issued a reasoned opinion.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 804-05 & n. 3 (1991).  In this

15   case, the appellate court analyzed and rejected the claim as follows:

16           Section 186.22, subdivision (b)(1) provides for a sentence enhancement for "any
17   person who is convicted of a felony committed for the benefit of, at the direction of, or in
     association with any criminal street gang, with the specific intent to promote, further, or
     assist in any criminal conduct by gang members[.]"
18
19           Appellant contends there was insufficient evidence to support the gang
     enhancements found true by the jury in this case. Specifically, appellant argues there was
20   insufficient evidence that (1) the Norteno gang was a "criminal street gang"; and (2)
     appellant's crimes were committed with the specific intent to promote, further, or assist
21   other criminal conduct by gang members apart from the crimes of which he was
     convicted.

22           In assessing a claim of insufficiency of evidence, the reviewing court's task is to
     review the entire record in the light most favorable to the judgment to determine whether
23   it contains substantial evidence-evidence that is reasonable, credible, and of solid value
     such that a reasonable trier of fact could find the defendant guilty beyond a reasonable
24   doubt. The standard of review is the same in cases in which the prosecution relies mainly
     on circumstantial evidence. It is the jury, not the appellate court, which must be
25   convinced of the defendant's guilt beyond a reasonable doubt. If the circumstances
     reasonably justify the trier of fact's findings, the opinion of the reviewing court that the
26   circumstances might also reasonably be reconciled with a contrary finding does not
     warrant a reversal of the judgment. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; also see
27   *People v. Johnson* (1980) 26 Cal.3d 557, 578; *Jackson v. Virginia* (1979) 443 U.S. 307,
     317-320.)

28

*A. Criminal Street Gang*

Section 186.22, subdivision (f) defines "'criminal street gang'" to mean "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of [certain enumerated] criminal acts ..., having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f); see *People v. Sengpadychith* (2001) 26 Cal.4th 316, 323 (*Sengpadychith*).) Accordingly, "[t]o prove the existence of a criminal street gang, 'the prosecution must prove that the gang (1) is an ongoing association of three or more persons with a common name or common identifying sign or symbol; (2) has as one of its primary activities the commission of one or more of the criminal acts enumerated in the statute; and (3) includes members who either individually or collectively have engaged in a "pattern of criminal gang activity" by committing, attempting to commit, or soliciting *two or more* of the enumerated offenses (the so-called "predicate offenses").... [Citation.]' [Citation.]" (*In re Jose P.* (2003) 106 Cal.App.4th 458, 466-467; accord, *People v. Ortega* (2006) 145 Cal.App.4th 1344, 1355; *People v. Vy* (2004) 122 Cal.App.4th 1209, 1222.) Appellant here challenges the sufficiency of the evidence as to the second ("primary activities") and third ("pattern of criminal gang activity") elements.

*1. Primary Activities*

"The phrase 'primary activities,' as used in the gang statute, implies that the commission of one or more of the statutorily enumerated crimes is one of the group's 'chief' or 'principal' occupations. [Citation.]" (*Sengpadychith, supra,* 26 Cal.4th at p. 323.) "Sufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute." (*Id.* at p. 324.) The gang's primary activities also may be proved by expert testimony where the gang expert's opinions are based on conversations with gang members (including the defendant), the expert's own experience investigating gang crime, and "information from colleagues in [the expert's] own police department and other law enforcement agencies." (*Id.* at p. 324 .) As the court explained in *People v. Vy, supra,* 122 Cal.App.4th at p. 1223, fn. 9, "because the culture and habits of gangs are matters which are 'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact" (Evid.Code, § 801, subd. (a)), opinion testimony from a gang expert, subject to the limitations applicable to expert testimony generally, is proper. [Citation.] Such an expert-like other experts-may give opinion testimony that is based upon hearsay, including conversations with gang members as well as with the defendant. [Citations.] Such opinions may also be based upon the expert's personal investigation of past crimes by gang members and information about gangs learned from the expert's colleagues or from other law enforcement agencies. [Citations.]"

Officer Mena testified in this case that he had been an officer with the Visalia Police Department for thirteen years and had been a member of the gang suppression unit for the past eight years. Officer Mena also testified that he frequently attended conferences and training programs specifically related to gangs and that he belonged to both a local gang task force and a state association of gang investigators. In his work, he had contact with gang members on nearly a daily basis and had spoken with over 500 gang members. He had also testified as a gang expert over 50 times. Officer Mena further testified that he had personally investigated over 150 crimes involving members of the Norteno gang, including "[a]ssault with deadly weapons, murder, attempt murder, car jacking, [and] robberies." He had also talked to other police officers and reviewed other officers' reports about the Norteno gang. Officer Mena's testimony demonstrated his familiarity with the Norteno gang in Visalia and Tulare County, including its culture and

subcliques.

Officer Mena testified that the primary activities of the Norteno gang included "assaults, assaults with deadly weapons, shootings into dwellings, car jackings, robberies, attempt murder, murder[,]" and "[v]andalism." Most of these activities are specified in section 186.22, subdivisions (e) and (f) as qualifying primary activities.[FN2] Appellant did not object at trial to either Officer Mena's qualifications as an expert or the foundation for his testimony. There was thus sufficient evidence to support the jury's finding on the primary activities element.

> FN2. As discussed below in part II of the discussion, although felony vandalism is a qualifying primary activity, misdemeanor vandalism is not.

Appellant relies on *In re Alexander L.* (2007) 149 Cal.App.4th 605 (*Alexander L.*). In that case, the appellate court reversed the juvenile court's true finding on a gang enhancement on the ground that the gang expert's testimony was insufficient to support the primary activities element. The expert had testified, "'I know they've [the gang] committed quite a few assaults with a deadly weapon, several assaults. I know they've been involved in murders. [¶] I know they've been involved with auto thefts, auto/vehicle burglaries, felony graffiti, narcotic violations.'" (*Id.* at p. 611.) The expert did not explain how he knew about the offenses (*id.* at p. 612), and on cross-examination, he conceded that the vast majority of cases relating to the gang involved graffiti, but failed to specify whether the incidents involved misdemeanor or felony vandalism. (*Ibid.*) The expert in *Alexander L.* thus failed to establish the foundation for his testimony, failed to testify that the crimes he cited constituted the gang's primary activities, equivocated on direct examination and contradicted himself on cross-examination. (*Id.* at pp. 611-612; see *People v. Margarejo* (2008) 162 Cal.App.4th 102, 107 [distinguishing *Alexander L.*].)

Here, Officer Mena's testimony suffered none of these deficiencies. Officer Mena had training and experience as a gang expert. He specifically testified as to the Norteno gang's primary activities. His years dealing with the gang, his investigations of the gang's crimes, his personal conversations with gang members, and his conversations with other officers and reviews of police reports sufficed to establish the foundation for his testimony. (See *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1330; *People v.. Ramirez* (2007) 153 Cal.App.4th 1422, 1427.) Accordingly, the decision in *Alexander L., supra,* 149 Cal.App.4th 605, does not alter our conclusion.

## 2. Pattern of Criminal Gang Activity

"'A "pattern of criminal gang activity" is defined as gang members' individual or collective "commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more" enumerated "predicate offenses" during a statutorily defined time period. [Citations.] The predicate offenses must have been committed on separate occasions, or by two or more persons. [Citations.]'" (*People v. Bragg* (2008) 161 Cal.App.4th 1385, 1400, quoting *People v. Duran* (2002) 97 Cal.App.4th 1448, 1457; see also § 186 .22, subd. (e); *People v. Gardeley* (1996) 14 Cal.4th 605, 620-621 .)

The prosecution introduced evidence through Officer Mena that two members of the Norteno gang were convicted of predicate crimes committed on separate occasions- specifically, robbery (§ 186.22, subd. (e)(2)) and attempted murder (§ 186.22, subd. (e)(3)). Appellant neither objected to nor disputed that evidence below. On appeal, however, he claims Officer Mena's testimony as to the predicate offenses necessary to establish a pattern of criminal gang activity was "conclusory" and therefore insufficient. He cites to *In re Jose T.* (1991) 230 Cal.App.3d 1455, 1462, ["Conclusional testimony

that gang members have previously engaged in the enumerated offenses, based on nonspecific hearsay and arrest information which does not specify exactly who, when, where and under what circumstances gang crimes were committed, does not constitute substantial evidence"]. He also cites to *In re Leland D.* (1990) 223 Cal.App.3d 251 (*Leland D*) and *In re Nathaniel C.* (1991) 228 Cal.App.3d 990 (*Nathaniel C.*). We find these cases inapposite.

In *Leland D.,* the gang expert initially testified that members of the defendant's gang had engaged in the sale of rock cocaine, and had committed vehicle thefts and assaults. On closer examination, he admitted he had no specific knowledge of who in the gang committed such offenses and "when, where and under what circumstances" they occurred. (*Leland D., supra,* 223 Cal.App.3d at p. 259.) In addition, "[t]he sources of [his] conclusional pronouncements appear[ed] to have been hearsay statements from unidentified gang members and information pertaining to arrests of purported gang members all made without a definite timeframe being established." (*Ibid.*) Stressing that "[e]vidence that an individual has been arrested for an offense, without more, is not sufficient to establish either that a crime has been committed or that any particular individual is guilty of its commission," this court concluded that the expert's testimony "f[ell] far short of what is required to prove 'the commission, attempted commission, or solicitation of two or more of the [statutorily enumerated] offenses' (§ 186.22, subd. (e)) within the requisite three-year time period." (*Leland D.,* at pp. 258, 259-260.)

Similarly, the court in *Nathaniel C., supra,* 228 Cal.App.3d found the expert's testimony with regard to the predicate offenses insufficient. There, the expert witness, a south San Francisco police officer, learned about the offense from San Bruno police officers. The incident involved the shooting of a person the San Bruno police believed to be a member of the gang. The expert said the San Bruno police believed the shooter also was a gang member and the shooting was gang-related. (*Id.* at p. 998.) The court concluded the expert "offered only nonspecific hearsay of a *suspected* shooting of one [gang] member by another. The [expert] witness ... had no personal knowledge of the incident and only repeated what San Bruno police told him they believed about the shooting. Such vague, secondhand testimony cannot constitute substantial evidence that the required predicate offense by a gang member occurred." (*Id.* at p. 1003, italics added.)

Here, Officer Mena testified that he prepared "the gang work-up" on Robert Mendoza, a member of the Northside Side Visalia ("NSV") subclique of the Norteno gang, which Officer Mena was familiar. To Officer Mena's knowledge, Mendoza was arrested for five or six robberies with gang enhancements. When asked when the robberies took place, Officer Mena referred to his report and testified, "I know there was numerous 211 reports. All the reports are '05 cases so I think in the middle of '05 June, July." Officer Mena confirmed that Mendoza was convicted of the robberies with gang enhancements. Officer Mena further testified that he was familiar with and reviewed the information pertaining to an attempted murder committed by William Barnwell on December 23, 2006. Barnwell was convicted of the attempted murder with a gang enhancement. Officer Mena testified that the case involved "a gang party in which a fight broke out in which ... Barnwell stabbed a subject 11 times during a fight." Barnwell was a member of the Norteno gang and the victim was a member of rival Sureno gang.

We conclude Officer Mena's testimony about the predicate offenses was not based on the type of conclusory, nonspecific hearsay and arrest information deemed insufficient in *Leland D.* and *Nathaniel C.* Here, in contrast to testimony about offenses committed by unnamed persons on unspecified dates, Officer Mena identified the persons who committed the offenses and when the offenses took place. He also testified that the gang members were convicted of the predicate offenses. That is a far cry from hearsay that gang members were suspected of committing the offenses. Moreover, as the jury was

properly instructed, one of appellant's present offenses could also be used as evidence of a predicate offense "in deciding whether one of the group's primary activities was commission of that crime, and whether a pattern of criminal gang activity had been proved." The evidence clearly sufficed to establish a pattern of criminal gang activity.

Appellant goes on to argue the evidence was insufficient to support the gang enhancements because the prosecution failed to present evidence establishing he had knowledge that members of his gang had engaged in a pattern of criminal activity. We disagree. Section 186.22, subdivision (b)(1) does not require knowledge of "a pattern of criminal gang activity" as does subdivision (a). (See *People v. Gamez* (1991) 235 Cal.App.3d 957, 974, disapproved on other grounds in *People v. Gardeley, supra,* 14 Cal.4th at p. 624, fn. 10 ["It [subd. (b) ] does not require knowledge of the predicate offenses as a prerequisite to its imposition"].)

Although appellant was not charged with the substantive gang offense (§ 186.22, subd. (a)), he was charged in count 4 with the offense of carrying a loaded firearm while an active participant in a criminal street gang pursuant to section 12031, subdivision (a)(2)(C). Our Supreme Court has held that "section 12031(a)(2)(C)'s phrase 'active participant in a criminal street gang, as defined in subdivision (a) of Section 186.22' [refers] to the substantive gang offense defined in section 186.22(a)." (*People v. Robles* (2000) 23 Cal.4th 1106, 1115.) The substantive offense requires proof that the defendant (1) actively participated in a criminal street gang with *knowledge* that its members engage in, or have engaged in, a pattern of criminal gang activity, and (2) willfully promoted, furthered, or assisted in felonious criminal conduct by members of the gang. (*People v. Robles, supra,* at pp. 1111, 1115.)

Although the parties on appeal do not address the issue, we find the prosecution presented sufficient evidence of all the requirements of section 186.22, subdivision (a), *including* appellant's knowledge that members of his gang have engaged in a pattern of criminal gang activity. Thus, appellant was properly charged and convicted of carrying a loaded firearm while an active participant in a criminal street gang under section 12031, subdivision (a)(2)(C). To satisfy the knowledge requirement of section 186.22, subdivision (a), a defendant must be aware that members of his gang participated in at least two offenses meeting the statutory requirements within a three-year time frame. It need not be proven a defendant had actual knowledge of the specific predicate offenses relied upon by the prosecution. (*People v. Gamez, supra,* 235 Cal.App.3d at pp. 975-976.) Appellant's current offenses were committed with L.O., a self-admitted Norteno gang member against a person associated with the rival Sureno gang. Clearly, appellant had knowledge of the pattern of criminal activity because his own conduct and that of L.O.'s, committed in appellant's presence, established the requisite pattern.

*B. Specific Intent*

Finally, appellant claims the evidence was insufficient to support the "specific intent" element of the gang enhancements because there was no evidence the crimes were done with the specific intent to promote, further, or assist *other* criminal conduct by gang members apart from the crimes of which he was convicted. We reject appellant's argument that the specific intent requirement of Penal Code section 186.22, subdivision (b)(1) is governed by the holding in *Garcia v. Carey* (9th Cir.2005) 395 F.3d 1099, which interpreted that section to require a finding that the gang conduct promoted by the gang member must be separate from the facts of the underlying conviction. (See also *Briceno v. Scribner* (9th Cir.2009) 555 F.3d 1069, 1103.) This interpretation is at odds with the plain language of the statute and with the analysis by other California courts that have considered it. We reject it as well.[FN3] "By its plain language, the statute requires a showing of specific intent to promote, further, or assist in '*any* criminal conduct by gang

10

1
2

members,' rather than *other* criminal conduct. (§ 186.22, subd. (b)(1)....)" (*People v. Romero* (2006) 140 Cal.App.4th 15, 19; see also *People v. Hill* (2006)142 Cal.App.4th 770, 774.) We find the evidence was more than sufficient to support the specific intent requirement under the correct standard.

3
4
5

> FN3. Federal court interpretation of state law is not binding. (*People v. Burnett* (2003) 110 Cal.App.4th 868, 882; *Oxborrow v. Eikenberry* (9th Cir.1989) 877 F.2d 1395, 1399.)

6

(See Resp't's Answer, Ex. A.)

7
8
9
10
11
12
13
14

The law on insufficiency of the evidence claim is clearly established.  The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Sufficiency claims are judged by the elements defined by state law.  Id. at 324 n.16.  On federal habeas review, AEDPA requires an additional layer of deference to the state decision. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir.2005).  This Court must determine whether the state decision was an unreasonable application of the Jackson standard.

15
16
17
18
19
20
21
22

Pursuant to Cal. Penal Code § 186.22(b), "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" is punishable with an additional prison term.  In this case, the appellate court reasonably determined there was substantial evidence from which a rational jury could determine that Petitioner committed the murder in association with a criminal street gang with the specific intent to promote, further, or assist his fellow gang members.

23
24
25
26
27
28

First, there was substantial evidence from which any rational trier of fact could determine that the Norteno gang constituted a criminal street gang within the meaning of Cal. Penal Code § 186.22(f).  The expert testified that he had personally investigated over 150 crimes involving members of the Norteno gang. The expert further testified that the primary activities of the Norteno gang included assaults, assaults with deadly weapons, shootings at dwellings, car jackings, robberies, attempted murders, murders and vandalism.  There was also evidence that

1   specific members of the gang engaged in these criminal activities such that a pattern of criminal

2   gang activity was demonstrated.  There was sufficient evidence from which to conclude the

3   Norteno gang was a criminal street gang.

4          Second, there was sufficient evidence from which any rational jury could conclude that

5   Petitioner committed the instant offense with the specific intent to promote, further, or assist

6   fellow gang members.  There was ample evidence that Petitioner and his associates were

7   members of the Norteno gang.  There was also evidence that the offenses were committed against

8   a member of the rival Sureno gang in retaliation for an earlier confrontation between Petitioner's

9   associate and the rival gang member.  At the time of arrest, Petitioner and his associates were

10  outfitted in attire typical of Norteno gang members.  The state court determination that the

11  evidence was more than sufficient to support the specific intent requirement was reasonable.

12         Petitioner argues his claim is supported by the opinion in Briceno v. Scribner, 555 F.3d

13  1069 (9th Cir. 2009), in which the Ninth Circuit stated that "section 186.22's gang enhancement

14  can only be applied when the defendant had the specific intent to facilitate gang members'

15  criminal activities other than the charged crime."  However, the California Supreme Court

16  determined in People v. Albillar, 51 Cal.4th 47 (2010), that the Ninth Circuit's interpretation of

17  Cal. Penal Code § 186.22(b)(1) was wrong, and that "'the specific intent to promote, further, or

18  assist in any criminal conduct by gang members' is unambiguous and applies to *any* criminal

19  conduct, without a further requirement that the conduct be 'apart from' the criminal conduct

20  underlying the offense of conviction sought to be enhanced.'"  Albillar, 51 Cal.4th at 66

21  (emphasis in original).  Federal courts are bound by state court rulings on questions of state law.

22  Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989).

23  Therefore, Briceno does not aid Petitioner in his argument.

24         Petitioner fails to demonstrate that the state court's decision was "contrary to, or involved

25  an unreasonable application of, clearly established Federal law," or an "unreasonable

26  determination of the facts in light of the evidence."  The claim should be rejected. 28 U.S.C.

27  § 2254(d).

28

12

1    B. Instructional Error

2         Petitioner next alleges the court prejudicially erred by instructing the jury that the gang

3    enhancement could be based on the commission of grand theft or vandalism, among others.

4    Petitioner states these two crimes are not enumerated offenses for purposes of Cal. Penal Code

5    § 186.22(f), and argues that the jury could have improperly relied on only the commission of

6    these two types of crimes in concluding the Norteno gang was a criminal street gang.

7         This claim was also presented on direct appeal to the Fifth DCA and denied in a reasoned

8    decision. (See Resp't's Answer, Ex. A.)  The claim was then raised and rejected in the California

9    Supreme Court.  (See Lodged Doc. No. 4.)  This Court must "look through" to the decision of the

10   appellate court.  Ylst, 501 U.S. at 804-05 & n. 3.  The appellate court denied the claim as

11   follows:

12            Appellant next contends it was prejudicial error to instruct the jury that the
         defining primary activities of a criminal street gang could include commission of offenses
13       not specified in section 186.22, subdivisions (e) and (f).[FN4] The trial court's instruction on
         this element included as qualifying offenses the commission of "vandalism" and "grand
14       theft." As appellant correctly observes, although felony vandalism is specified as a
         qualifying offense in the gang enhancement statute, misdemeanor vandalism is not. (§
15       186.22, subd. (e)(20)) Similarly, only certain types of grand theft are specified. (§ 186.22,
         subd. (e)(9) [grand theft as defined in § 487, subd. (a) or (c) ].)

16
             FN4. The trial court instructed the jury with Judicial Council of California
17       Criminal Jury Instructions (2007-2008), CALCRIM No. 1401 (CALCRIM), on
         the definition of a criminal street gang, in relevant part as follows: "A criminal
18       street gang is any ongoing organization, association, or group of three or more
         persons, whether formal or informal: [¶] ... [¶] That has, as one or more of its
19       primary activities, the commission of assaults with deadly weapons, carjackings,
         shooting at homes, murder, robbery, vandalism, attempted murder, grand theft,
20       burglary[.]" The same list of offenses was provided for consideration in
         connection with the pattern of criminal gang activity element of the gang
21       enhancement.

22            Initially, we agree with respondent that because the instruction was correct in law,
         it was appellant's responsibility to seek clarifying or amplifying instructions. He did not
23       do so. Having failed to request an instruction, he has forfeited his claim on appeal.
         (People v. Guiuan (1998) 18 Cal.4th 558, 570 ["'Generally, a party may not complain on
24       appeal that an instruction correct in law and responsive to the evidence was too general or
         incomplete unless the party has requested appropriate clarifying or amplifying
25       language'"]; People v. Lang (1989) 49 Cal.3d 991, 1024.) As respondent observes,
         appellant is essentially claiming the instructions were too general (use of the term
26       "vandalism" should have been limited to felony vandalism and the term "grand theft"
         should have been limited to the types of grand theft specified in section 186.22,
27       subdivision (e)(9)) and the instructions should have been amplified to include the
         elements of the crimes listed. These claims come squarely within the general forfeiture
28       rule.

1

2       We nonetheless find that the error in listing vandalism and grand theft as potential primary activities was harmless, as it was not reasonably probable that if the offenses had been omitted, or properly qualified, a verdict more favorable to appellant would have resulted. (*People v. Palmer* (2005) 133 Cal.App.4th 1141, 1157 [misdirection of the jury, including incorrect, ambiguous, conflicting, or wrongly omitted instructions that do not amount to federal constitutional error, are reviewed under *People v. Watson* (1956) 46 Cal.2d 818, 836].) Contrary to appellant's suggestion, it is not reasonably probable the jury found either vandalism or grand theft (or both) to be the *only* primary activity of the Norteno gang. The court's instruction on the primary activities element also included for consideration, among others, the offenses of robbery, attempted murder, assault with a deadly weapon, and shooting at an inhabited dwelling. The evidence showed commission of these offenses by particular members of the Norteno gang. In contrast, there was no evidence of grand theft to which the jury could have misapplied the instruction and there was only passing reference to graffiti and vandalism in the gang expert's testimony. (See *People v. Williams* (2009) 170 Cal.App.4th 587, 627 [failure to specify what type of assault qualified as a predicate offense in modified CALCRIM No. 1401 was harmless error where no evidence was introduced that any gang member was arrested or convicted of a nonqualifying assault].)[FN5]

3

4

5

6

7

8

9

10

11       FN5. To the extent the jury might have equated "robbery" with "grand theft" based on the expert's testimony that a member of the Norteno gang committed numerous robberies, as appellant suggests, appellant fails to show how this demonstrates prejudice as robbery is among the statutorily enumerated offenses.

12

13       We simply find no support in the record for appellant's claim that "[i]t is conceivable that the jurors ... stopped deliberating after finding that the gang had undifferentiated 'grand theft' or 'vandalism' as a primary activity." Rather, given the paucity of evidence of either grand theft or vandalism, it is more likely the jury considered the present assault with a semiautomatic firearm and shooting at an inhabited dwelling and the specific predicate offenses testified to by the gang expert in determining whether the primary activities element had been met. Accordingly, we find no prejudicial error resulted from the inclusion of the crimes of vandalism and grand theft in the court's instructions on the gang enhancements.

14

15

16

17

18   (See Resp't's Answer, Ex. A.)

19       1.   Procedural Default

20       A federal court will not review a petitioner's claims if the state court has denied relief of

21   those claims pursuant to a state law that is independent of federal law and adequate to support the

22   judgment. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722,

23   729-30 (1989); See also, Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935).  A state court's

24   refusal to hear the merits of a claim because of petitioner's failure to follow a state procedural

25   rule is considered a denial of relief on independent and adequate state grounds.  Harris v. Reed,

26   489 U.S. 255, 260-61 (1989).  This doctrine of procedural default is based on the concerns of

27   comity and federalism. Coleman, 501 U.S. at 730-32.

28       There are limitations as to when a federal court should invoke procedural default and

refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules.

Procedural default can only block a claim in federal court if the state court "clearly and expressly

states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263

(1989).  For California Supreme Court decisions, this means the Court must specifically have

stated that it denied relief on a procedural ground. Ylst v. Nunnemaker, 501 U.S. 797, 803

(1991); Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1993); Hunter v. Aispuro, 982 F.2d

344, 347-48 (9th Cir. 1991).  If the California Supreme Court denies a petitioner's claims without

any comment or citation, the federal court must consider that it is a decision on the merits.

Hunter v. Aispuro, 982 F.2d at 347-48.

In addition, a federal court may only impose a procedural bar on claims if the procedural

rule that the state used to deny relief is "firmly established and regularly followed."  O'Dell v.

Thompson, 502 U.S. 995, 998 (1991) (statement of Blackmun joined by Stevens and O'Connor

respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-24 (1991); James v.

Kentucky, 466 U.S. 341, 348-51 (1984).  The state procedural rule used must be clear,

consistently applied, and well-established at the time of the petitioner's purported default.  Fields

v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96

F.3d 112, 129 (9th Cir. 1996), cert. denied, 117 S.Ct. 1569.

In this case, the appellate court rejected the claim in accordance with California's

contemporaneous objection rule, because the defense failed to object to the instruction and

request a more specific definition of the offenses.  The Ninth Circuit has noted that California's

contemporaneous objection rule is consistently applied independent of federal law. Melendez v.

Pliler, 288 F.3d 1120, 1125 (9th Cir.2002); Vansickel v. White, 166 F.3d 953, 957 (9th Cir.1999).

If the court finds an independent and adequate state procedural ground, "federal habeas

review is barred unless the prisoner can demonstrate cause for the procedural default and actual

prejudice, or demonstrate that the failure to consider the claims will result in a fundamental

miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501

U.S. at 750, 111 S.Ct. 2456; Park, 202 F.3d at 1150. In this case, Petitioner has not shown that

any external factor prevented defense counsel from objecting or requesting more specific

1 | instructions.  In addition, Petitioner does not  demonstrate actual prejudice resulting from the

2 | failure to object.

3 | Petitioner has also failed to demonstrate that a fundamental miscarriage of justice will

4 | occur if the claim is barred from federal review.  The miscarriage of justice inquiry is governed

5 | by the standard set forth in Murray v. Carrier, 477 U.S. 478 (1986). Murray requires a habeas

6 | petitioner to show that "a constitutional violation has probably resulted in the conviction of one

7 | who is actually innocent." Id. at 496. To satisfy Murray's "actual innocence" standard, a

8 | petitioner must show that, in light of new evidence, it is more likely than not that no reasonable

9 | juror would have found him guilty beyond a reasonable doubt. Id. Here, Petitioner makes no such

10 | showing of actual innocence.

11 | Accordingly, Petitioner is procedurally barred from bringing this claim. In any case,

12 | Petitioner's claim is without merit.

13 | 2.  Review of Claim

14 | The Supreme Court has held that the fact that an instruction was allegedly incorrect under

15 | state law is not a basis for habeas relief. Estelle v. McGuire, 502 U.S. 62, 71 (1991), *citing*

16 | Marshall v. Lonberger, 459 U.S. 422, 438, n. 6 (1983) ("[T]he Due Process Clause does not

17 | permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary

18 | rules").  Federal habeas courts therefore do not grant relief simply because an instruction may

19 | have been deficient. Estelle, 502 U.S. at 72.  The only question is "whether the ailing instruction

20 | by itself so infected the entire trial that the resulting conviction violates due process." Cupp v.

21 | Naughten, 414 U.S. 141, 147 (1973); see also Estelle, 502 U.S. at 72; Henderson v. Kibbe, 431

22 | U.S. 145, 154 (1977); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be

23 | established not merely that the instruction is undesirable, erroneous, or even "universally

24 | condemned," but that it violated some [constitutional right]'"). "It is well established that the

25 | instruction 'may not be judged in artificial isolation,' but must be considered in the context of the

26 | instructions as a whole and the trial record." Estelle, 502 U.S. at 72, *quoting* Cupp v. Naughten,

27 | supra, 414 U.S., at 147. In addition, in reviewing the instruction, the court must inquire "whether

28 | there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that

violates the Constitution. <u>Boyde v. California</u>, 494 U.S. 370, 380 (1990).  Even if constitutional

instructional error has occurred, the federal court must still determine whether Petitioner's

suffered actual prejudice, that is, whether the error "had substantial and injurious effect or

influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993).

In this case, the state court determined that any error was harmless, as it was not

reasonably probable that if the offenses had been omitted or properly qualified, a more favorable

verdict for Petitioner would have resulted.  As noted by the appellate court, there was no

evidence of any grand thefts to which the jury could have misapplied the instruction, and there

was only a passing reference to graffiti and vandalism in the expert's testimony. (<u>See</u> Resp't's

Answer, Ex. A.)  On the other hand, the evidence showed commission of the other enumerated

offenses by particular members of the Norteno gang. (<u>See</u> Resp't's Answer, Ex. A.)  The state

court determination was entirely reasonable, and there is no possibility that the instructional error

had a substantial or injurious effect on the verdict.  The claim should be rejected.

<u>C.  Sentencing Error</u>

In his last claim, Petitioner alleges the trial court erred by imposing a life term based on

his conviction of shooting at an inhabited dwelling.

This claim was also raised and rejected on direct appeal.  The appellate court rendered the

last reasoned decision as follows:

> Finally, appellant contends the trial court erred, under the principles articulated in *People v. Arroyas* (2002) 96 Cal.App.4th 1439 (*Arroyas* ), in imposing an enhanced term of 15 years to life for his conviction of shooting at an inhabited dwelling (§ 246) pursuant to section 186.22, subdivision (b)(4).

> *Arroyas* is inapposite to this case. There, a trial court denied a demurrer by a defendant challenging allegations that he committed misdemeanor vandalism which was increased to a felony pursuant to section 186.22, subdivision (d) and then made subject to a gang enhancement pursuant to section 186.22, subdivision (b)(1). (*Arroyas, supra,* 96 Cal.App.4th at pp. 1440-1442.) *Arroyas* held that section 186.22, subdivision (d) provides an option to punish a misdemeanor more severely, however, this subdivision does not allow the prosecutor to bootstrap misdemeanors into section 186.22, subdivision (b)(1) felonies as a means of applying a double dose of harsher punishment. (*Arroyas, supra,* 96 Cal.App.4th at pp. 1445, 1448-1449.)

> This is not what happened here. Appellant was not charged with a misdemeanor violation of section 246, which was increased to a felony under section 186.22, subdivision (d) and then enhanced under section 186.22, subdivision (b). The information here charged appellant with a *felony* violation of section 246, alleging specifically that

appellant "willfully, unlawfully, and maliciously ... discharge[d] a firearm at an inhabited dwelling house [.]" The information further alleged that the crime was a serious felony within the meaning of section 1192.7, subdivision (c). After the jury found appellant committed the crime as charged, it found that the crime was committed for the benefit of a criminal street gang in violation of section 186.22, subdivision (b). The court then properly imposed an enhanced sentence under section 186.22, subdivision (b)(4)(B), which provides in relevant part: "Any person who is convicted of a felony ... committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, be sentenced to an indeterminate term of life imprisonment with a minimum term of [¶] ... [¶] ... 15 years, if the felony is ... *a felony violation of Section 246* [.]" (Italics added.) This case did not involve the type of improper bootstrapping condemned in *Arroyas*.

Nor do we find compelling appellant's argument that the record fails to demonstrate the court was aware that section 246 is a "wobbler" (that is, an offense punishable as either a misdemeanor or felony) or of its power to reduce a wobbler to a misdemeanor. We presume the trial court considered all relevant sentencing factors and options in the absence of an affirmative record to the contrary. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310; Cal. Rules of Court, rule 4.409.) There is nothing in this record indicating the trial court did not consider all of its sentencing options.

(See Resp't's Answer, Ex. A.)

Respondent correctly argues that the instant claim does not present a federal question. Petitioner challenges the interpretation and application of state sentencing law, and generally, issues of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). Federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989). Only if the alleged sentencing error was "so arbitrary or capricious as to constitute an independent due process" violation is federal habeas relief available. Richmond v. Lewis, 506 U.S. 40, 50 (1992).

In this case, there was no sentencing error. The appellate court noted that Petitioner was not charged with a misdemeanor that was improperly increased to a felony and then used as a basis for the enhancement. Rather, the offense at issue - shooting at an inhabited dwelling - was charged as a serious felony. Moreover, there is nothing in the record to indicate that the sentencing judge was not aware of all sentencing options. As noted by Respondent, the Court

1 must defer to the state courts' interpretation and application of state law concerning the propriety

2 of Petitioner's sentence. Wainwright v. Goode, 464 U.S. 78, 84 (1983).  The claim should be

3 rejected.

4 **RECOMMENDATION**

5       Accordingly, the Court HEREBY RECOMMENDS that this action be DENIED WITH

6 PREJUDICE.

7       This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill,

8 United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and

9 Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of

10 California.  Within thirty (30) days after service of the Findings and Recommendation, any party

11 may file written objections with the court and serve a copy on all parties.  Such a document

12 should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies

13 to the objections shall be served and filed within fourteen (14) days after service of the

14 objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C.

15 § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time

16 may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th

17 Cir. 1991).

18       IT IS SO ORDERED.

19   **Dated:**   **April 24, 2012**       **/s/ Barbara A. McAuliffe**

20                        UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28